## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF SOUTH CAROLINA

IN RE:

DC Development, Inc.,

Alleged Debtor.

C/A No. 17-01279-DD

Chapter 7

**ORDER**

This matter is before the Court on alleged debtor DC Development, Inc.'s April 11, 2017 motion to dismiss [Docket No. 12] the involuntary petition filed by three creditors on March 15, 2017.  An objection to the motion to dismiss was filed by the petitioning creditors, Bigford Enterprises, Inc. ("Bigford"), Bishop & Associates, Inc. ("Bishop"), and McBride Building Supplies and Hardware, Inc. ("McBride") (collectively, "Petitioning Creditors") on May 10, 2017 [Docket No. 20].  Hearings were held on May 25, 2017 and June 2, 2017.  The Court took the matter under advisement at the conclusion of the hearings, and now issues this order.  DC Development's motion is granted.

## **BACKGROUND**

1.  DC Development is in the construction business and employs subcontractors to perform various jobs as part of larger projects.  As is common in the construction industry, once DC Development is paid as the general contractor it then pays its subcontractors.

2.  Petitioning Creditors are all subcontractors who were not paid by DC Development in connection with the construction of a low income apartment complex for Glenwood Falls, LP ("Glenwood Falls") in Fort Mill, South Carolina.

3.  Glenwood Falls failed to pay DC Development and on January 4, 2005 DC Development obtained a judgment against Glenwood Falls for $1,313,527.50.  At the time of the

judgment, Charleston Affordable Housing, Inc. ("CAH") was a general partner of Glenwood Falls.

4.   As a result of not being paid by Glenwood Falls, DC Development did not pay its subcontractors on the project.

5.   On May 11, 2005, DC Development confessed judgment to McBride in the amount of $253,905.40.  The McBride confession of judgment was recorded in York County, South Carolina on May 11, 2005.

6.   On June 9, 2005, DC Development defaulted on a suit brought by Bishop and judgment was entered against DC Development in the amount of $152,371.19.  The Bishop default judgment was recorded in York County, South Carolina on June 9, 2005.

7.   On August 8, 2005, DC Development confessed judgment to Bigford in the amount of $79,060.00.  The Bigford confession of judgment was recorded in York County, South Carolina on December 21, 2011.  Wendell Hawkins, the attorney retained by Petitioning Creditors in 2011, testified that he discovered in 2011 that the Bigford judgment had previously not been recorded and recorded it upon that discovery.

8.   On February 12, 2009, CAH filed a voluntary petition under chapter 11 of the Bankruptcy Code.  As part of the bankruptcy, CAH filed various adversary proceedings, including one against DC Development.  The matters before the bankruptcy court were resolved by a Compromise and Settlement Agreement entered into on April 14, 2011 [Case No. 09-01020-DD, Dkt. No. 210].  Under the Settlement Agreement, DC Development received a judgment against CAH in the amount of $2,279,996 and agreed to receive payments against this judgment out of the "Net Operating Cash Flow" of CAH.  Payments under the Settlement Agreement were to continue for 15 years, until 2026.

9. In 2011, Petitioning Creditors transcribed their judgments to Lancaster County, South Carolina.

10. In 2012, Petitioning Creditors brought supplemental proceedings against DC Development in Lancaster County, South Carolina.  In response to a motion to compel, DC Development produced twenty boxes of documents to Petitioning Creditors.  Mr. Hawkins testified the contents were unorganized, and he had to take a picture of any desired document with a cell phone in order to receive a copy.

11. DC Development and Petitioning Creditors entered into consent orders concerning the transcribed judgments on April 30, 2013.  The consent orders were filed in Lancaster County on May 3, 2013.

12. Pursuant to the consent orders, "any distributions, proceeds or other sums" due to DC Development pursuant to its settlement agreement with CAH would be "assigned, redirected, and paid over to counsel" for Petitioning Creditors.

13. Since the date of the consent orders, Petitioning Creditors have received one payment from CAH on August 1, 2013.  McBride received $55,534.39; Bishop received $33,326.01; Bigford received $17,291.42.

14. Petitioning Creditors filed a civil action on January 2, 2014 in Horry County, South Carolina seeking to pierce the corporate veil of DC Development and to hold David A. Cox, as the dominant member of DC Development, personally liable for the Petitioning Creditors' judgments.  The civil action was initially dismissed by the circuit court, a decision that was reversed and remanded by the South Carolina Court of Appeals. Certiorari was denied by the South Carolina Supreme Court on September 21, 2016.  The civil action is on-going in state court.

15.  On July 15, 2016 DC Development received a Notice of Complaint from South Carolina Department of Labor, Licensing and Regulation concerning a complaint filed by Wendell L. Hawkins, attorney for Petitioning Creditors in collection efforts against DC Development.  The complaint questioned whether DC Development should have a contractor's license and asserted misstatements by DC Development in its license application.

16.  Petitioning Creditors filed a chapter 7 involuntary petition against DC Development on March 15, 2017.

17.  DC Development continues in business, providing general and residential construction services.  DC Development introduced into evidence a summary list containing more than twelve existing creditors.  Mr. Cox testified that DC Development pays its current bills as they become due.

## ANALYSIS

An involuntary bankruptcy case under 11 U.S.C. § 303 is commenced by the filing of a petition under chapter 7 or 11 by "three or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability or the subject of a bona fide dispute as to liability or amount…"  *See* 11 U.S.C. § 303(b)(1).  For an involuntary petition filed against a person with fewer than 12 creditors, only one entity that holds a claim that is in the aggregate at least $15,775 is required.  *See* 11 U.S.C. § 303(b)(2).  Petitioning Creditors have the burden of proving their eligibility as petitioners.  Resolution of DC Development's motion turns on whether there are bona fide disputes concerning one or more of the Petitioning Creditors' claims.

4

### A. Bona Fide Dispute

"Although courts have not agreed on a precise definition of 'bona fide dispute,' it clearly entails some sort of meritorious, existing conflict." *Atlas Mach. & Iron Works, Inc. v. Bethlehem Steel Corp.*, 986 F.2d 709, 715 (4th Cir. 1993). The Fourth Circuit has adopted the view that "a bona fide dispute requires 'an objective basis for either a factual or a legal dispute as to the validity of [the] debt.'" *In re Byrd*, 357 F.3d 433, 437 (4th Cir. 2004) (internal citations omitted). Further, "a bona fide dispute exists only when there are substantial factual or legal questions that bear upon the debtor's liability." *Id*. "The bankruptcy court need not resolve the merits of the bona fide dispute, but simply determine whether one exists." *Id*. Petitioning creditors have the burden of proving that their claims are not the subject of a bona fide dispute.

### a. S.C. Code Ann. § 15-39-30

The issue of whether Petitioning Creditors' claims are subject to a bona fide dispute turns on South Carolina's statute establishing the period of enforceability of a judgment. South Carolina Code Section 15-39-30 states: "Executions may issue upon final judgments or decrees at any time within ten years from the date of the original entry thereof and shall have active energy during such period…"

The South Carolina Supreme Court has interpreted this statute as a statute of repose, not a statute of limitations. *See Hardee v. Lynch*, 212 S.C. 6, 46 S.E.2d 179 (1948) ("[The statute at issue] provides no limitation period, but completely destroys any right of action upon judgments. The logical result of the [statute] was to utterly extinguish a judgment after the expiration of ten years from the date of entry."). A statute of repose is distinctly different than a statute of limitations, because "a statute of repose creates a substantive right in those protected to be free

from liability after a legislatively-determined period of time." *Langley v. Pierce*, 313 S.C. 401,

403-04, 438 S.E.2d 242, 243 (1993); *see also Goad v. Celotex Corp.*, 831 F.2d 508 (4th Cir. 1987).

A statute of repose creates a strict time limit for liability. *See Linda Mc. Co., Inc. v. Shore*, 390

S.C. 543, 559, 703 S.E.2d 499, 507 (2010) (Beatty, J., dissenting) ("A statute of repose is typically

an absolute time limit beyond which liability no longer exists and is not tolled for any reason

because to do so would upset the economic balance struck by the legislative body") (quoting

*Langley*, 313 S.C. at 404, 438 S.E.2d at 243).

The South Carolina Supreme Court carved out a narrow exception to the general rule that

a judgment is utterly extinguished after the expiration of ten years from the date of entry.  The

court stated: "when a party has complied with the applicable statutes…and is merely waiting on a

court's order regarding execution and levy, the ten year limitation found in section 15-39-30 is

extended to when the court finally issues an order." *Linda Mc. Co., Inc.*, 390 S.C. at 555, 703

S.E.2d 505.  In *Linda Mc. Co, Inc.*, the ten-year limitation expired on June 2, 2015 and the court

issued its final order in the supplemental proceedings on June 3, 2015.  When the ten-year period

expired, the parties were only waiting on the court to issue its order and the "active energy" of the

judgment continued at least until the court order was entered.

In this matter, both the Bishop and McBride judgments were filed in 2005.  The 10-year

statute of repose begins to run from the date a judgment is filed. *See Commercial Credit Loans,

Inc. v. Riddle*, 334 S.C. 176, 512 S.E.2d 123 (Ct. App. 1999).  The 10-year statute of repose expired

in 2015 and DC Development's liability under the judgments was utterly extinguished.  While the

action to pierce the corporate veil is on-going in state court, Petitioning Creditors did not argue

that this fit within the narrow exception created in *Linda Mc. Co., Inc.*  Petitioning Creditors are

not simply waiting for a court to issue a final order.  Additionally, the purpose of the veil piercing

action is to impose liability on David A. Cox, not to otherwise collect the debt as to DC Development.  As the South Carolina Supreme Court has previously held, as soon as a judgment becomes more than ten years old, the creditor loses his judgment-creditor status.  *See Carr v. Guerard*, 365 S.C. 151, 154, 616 S.E.2d 429, 430 (2005) ("First, as soon as his judgment became more than ten years old, Carr lost his judgment-creditor status.").  Under South Carolina Code Section 15-39-30 DC Development's liability under the Bishop and McBride judgments has been extinguished and the judgments cannot be the basis for an involuntary petition under 11 U.S.C. § 303, as a bona fide dispute exists.

The Bigford judgment was not recorded until 2011.  DC Development's liability under the Bigford judgment is not extinguished until 2021.  Bigford has a valid claim against DC Development and is considered a creditor for the purpose of 11 U.S.C. § 303.

### b.  Equitable Tolling and Estoppel

While the Court need not resolve the bona fide dispute, it will address Petitioning Creditors' equitable arguments.  Petitioning Creditors argue that while their judgments are outside of the 10-year period established in South Carolina Code Section 15-39-30, the Court should apply equitable tolling or estoppel in this case to extend the life of their judgments.  The statute at issue in this case is a statute of repose, not a statute of limitations.  While the court in *Linda Mc. Co., Inc.* found that the statute operated like a statute of limitations under the facts presented in that case, it stressed that it was "a narrow holding limited to facts similar to those at issue in [that] case." 390 S.C. at 554, 703 S.E.2d at 505.  As previously discussed, the facts in this case are not similar to the facts at issue in *Linda Mc. Co., Inc.*  Without similar facts, the statute operates as a statute of repose, and "a statute of repose is typically an absolute time limit beyond which liability no longer exists and **is not tolled for any reason** because to do so would upset the economic

balance struck by the legislative body." *Linda Mc. Co., Inc.*, 390 S.C. at 559, 703 S.E.2d at 507

(2010) (Beatty, J., dissenting) (emphasis added) (quoting *Langley*, 313 S.C. at 404, 438 S.E.2d at

243). Therefore, to apply equitable tolling in this case would "upset the economic balance struck

by the legislative body."

Even if the statute operated as a statute of limitation in this case, Petitioning Creditors have

failed to carry their burden of showing equitable tolling should be applied. South Carolina rarely

applies the doctrine of equitable tolling. *Hooper v. Ebenezer Senior Servs. & Rehab. Ctr.*, 386

S.C. 108, 117, 687 S.E.2d 29, 33 (2009) ("[E]quitable tolling is a doctrine that should be used

sparingly…."). Petitioning Creditors appear to rely on the theory of tolling related to a "reliance"

period, bringing the Court's attention to *Hooper*. The tolling exception addressed in *Hooper* is

similar to the equitable estoppel argument addressed in the cases upon which Petitioning Creditors

rely. Equitable tolling and estoppel based on reliance stem from the idea a defendant should not

be able to rely on a statute of limitations defense when a plaintiff is induced by the defendant to

believe a claim would be taken care of without filing a claim. *See id.*; *see also Black v. Lexington

Sch. Dist. No. 2*, 327 S.C. 55, 488 S.E.2d 327 (1997) (Defendant may be estopped from claiming

statute of limitations as defense if delay that otherwise would give operation to statute was induced

by defendant's conduct; such inducement may consist either of express representation that claim

will be settled without litigation, or conduct that suggests lawsuit is not necessary.).

Petitioning Creditors failed to present evidence that they were induced to delay in pursuing

their judgments as a result of DC Development's actions. In fact, Petitioning Creditors have

actively been pursuing their judgments almost continuously. Petitioning Creditors' argument that

the consent orders entered into in 2013 that assigned any payments DC Development received

from CAH to Petitioning Creditors induced them to stop pursuing their judgments is also not

persuasive.  After entering into the consent orders, Petitioning Creditors filed suit to pierce the corporate veil of DC Development and filed a complaint against DC Development with South Carolina Department of Labor, Licensing and Regulation.  Further, Petitioning Creditors' argument that DC Development delayed their pursuit of their judgments by failing to respond to document requests and then producing twenty "unorganized" boxes of documents fails to satisfy the burden required to apply equitable tolling or estoppel which South Carolina has declared should be applied sparingly.  Petitioning Creditors have failed to carry the burden of establishing that equitable tolling or estoppel should be applied in this case.  The Petitioning Creditors did not forbear in any action based upon DC Development's representations regarding payment.

### B.  Claim Holders

The only evidence in the record, the list of vendors introduced by DC Development, shows that DC Development has more than twelve creditors who hold claims against it at the relevant periods of time.  Therefore, three or more entities holding a claim against DC Development are required under 11 U.S.C. § 303.  As discussed above, Bishop and McBride's claims against DC Development are subject to a bona fide dispute and Bishop and McBride are not claim holders that can commence an involuntary case against DC Development under § 303.

Bigford is the only Petitioning Creditor that can be considered a claim holder against DC Development under § 303.  Under § 303(b)(2), if only one holder of a claim files an involuntary petition, there must be a showing that the alleged debtor has fewer than twelve creditors who hold claims against it.  Here, Petitioning Creditors presented no evidence that DC Development has fewer than twelve creditors, as noted, the only evidence is that there are more than twelve creditors.  Therefore, Bigford alone cannot commence an involuntary case against DC Development.

## <u>CONCLUSION</u>

Bishop's and McBride's claims against DC Development are subject to a bona fide dispute and Bishop and McBride cannot be considered claim holders for purposes of filing an involuntary petition against DC Development.   Bigford cannot alone commence an involuntary case against DC Development, because no evidence was presented that DC Development has fewer than twelve creditors.   DC Development's motion to dismiss is granted.   DC Development may request a hearing within ten (10) days from the entry of this order to determine whether it is entitled to costs, attorney's fees, or other damages pursuant to § 303(i).

AND IT IS SO ORDERED.

**FILED BY THE COURT**
**06/08/2017**



David R. Duncan
Chief US Bankruptcy Judge
District of South Carolina

Entered: 06/09/2017